# Allen, Bethune & Co. v. McCreary, et al.

*Action against County Treasurer and his Sureties.*

1. *County certificates not commercial paper.*—County certificates, issued for jurors' and bailiffs' services, are not negotiable commercial paper, and the purchaser thereof takes them subject to all the defenses which the county may have against the transferror.

2 *Purchase by treasurer's deputy of county certificates.*—A purchase by a county treasurer's deputy, who performs all the duties of the office, of jurors' and bailiffs' certificates when he has county funds in his hands, and which he does not account for on the expiration of his term of office, is in law a payment of such certificates of the county with the county funds which were unaccounted for, and the transferee of the deputy can not collect them from said treasurer's successor in office.

APPEAL from the Circuit Court of Conecuh.
Tried before the Hon. JOHN P. HUBBARD.

This was an action brought by Allen, Bethune & Co. against J. A. McCreary, the county treasurer of Conecuh county, and the sureties on his official bond; and sought to recover damages for the breach of said bond by reason of the treasurer, McCreary, not paying, on presentation by the plaintiffs, certain bailiffs' and jurors' certificates, which had been regularly issued to the jurors, and bailiffs. and had been transferred to Allen, Bethune & Co., by one Herrington. The material facts of the case are sufficently stated in the opinion.

Upon the examination of one J. B. F. Watts, who was, during the time of the transactions involved in this suit, treasurer of Conecuch county, he was asked the following question by the plaintiffs' counsel: "Did not the grand jury at the Spring Term, 1886, make an examination of your books as county treasurer, and make a report thereon to the court?" The court refused to allow this question, and the plaintiffs duly excepted. The plaintiff then proposed to introduce in evidence in this connection the report of the grand jury made at the Spring Term, 1886, showing the amount of said deficit;

but the court refused to allow this report to be introduced, and to this ruling of the court the defendant duly excepted. The defendants separately introduced as witnesses, Messrs. Irwin, Long, Matthews, and Ward, each of whom testified that at the Spring Term, 1886, their certificates as grand jurors and bailiffs, respectively, were presented by each of them to N. H. Herrington, and were paid in cash. These certificates were among the number which form the basis of the present suit.

Upon the introduction of all the evidence the court, at the request of the defendants, gave the following written charges, and to the giving of each of said charges the plaintiffs duly excepted : (1.) "If the jury believe the evidence they should find for defendants." (2.) "If the jury believe the evidence they should find for the defendants as to the Irwin, Long, Matthews and Ward claims sued on."

FARNHAM & CRUM, for appellant.

BOWLES & RABB, *contra.*

STONE, C. J.—Watts was the county treasurer of Conecuh county, having all the rights pertaining to that office. He did not personally discharge the duties of the office, but by an arrangement between him and Herrington, the latter kept the books, and received and disbursed the county's money. In fact, he, Herrington, performed all the duties of the office, during the time of the tranasctions which gave rise to this suit. Those transactions occurred during the spring of the year 1886.

The following are undisputed facts : In April, 1886, Herrington incurred a debt of $2,000 to Allen, Bethune & Co., due November 1, 1886, and gave them a mortgage and crop lien to secure its payment. The mortgage conveyed, among other things, Herrington's crop to be grown that year, and ten head of mules. In the granting clause is this language : "Also county claims on Conecuh county, between $1,000 and $2,000 worth, to be properly transferred and fowarded to Allen, Bethune & Co., to cancel mortgage on the above 10 mules and crops ; provided satisfactory security to Allen, Bethune & Co., is placed in lieu thereof in twenty days." He did transmit to them county claims on Conecuh county, being

certificates issued to jurors and bailiffs for services rendered during the Spring Term, 1886 of the circuit court of that county; of jury certificates $200 in amount, and of bailiff certificates $100 in amount. These certificates were endorsed in blank by the persons to whom they were issued. Demand was made on the treasurer for the money these certificates represented, and he refused to pay them. The present suit was brought to enforce their payment; but the suit is against McCreary, the successor of Watts, and against the sureties of McCreary. The record contains this recital: "It was in evidence that at the time of presentation of claims sued on 'for payment to Herrington, he had enough money of the county on hand to pay them, unless he had disposed of it, and that Watts did not dispose of any of the money so as to cause a default." It was also an undisputed fact that Watts went out of office a defaulter to the extent of $4,000, even if the county defends this suit successfully; and that such default was chargeable to Herrington, and in no sense to Watts, who had not handled the money.

There is conflict shown in the testimony on a single inquiry of fact. Herrington testified that he had purchased from the persons to whom they were issued all the jury and bailiff certificates he had turned over to Allen, Bethune & Co., paying for them sometimes in money, and sometimes in merchandise. Several of the persons to whom the certificates had been issued were examined as witnesses, and each testified that he presented his claim to Herrington for payment, and that the latter paid him the money.

This suit, although in form against McCreary and his sureties, is practically a suit against the county; for if McCreary be required to pay the claim, it will become a credit on his account as treasurer.

The certificates, which constitute the cause of action in this suit, are not what is known as commercial paper. They are simply evidence of the county's indebtedness, to be paid out of the county's funds in hands of the county treasurer.—Code of 1886, §§ 915, 762, 848, 1756, 1757, 4883. And even if they were negotiable, commercial paper, they were then due, and the money they represented presently demandable, when, as is claimed, Herrington became the owner of them. For each of

[Knight v. Bradley.]

these reasons, they were open to the same defenses which could have been made if Herrington himself had been plaintiff in the action.—Code, § 1765; 3 Brick. Dig., 740, §§ 32, 33.

Another principle must not be lost sight of. Herrington, as we have shown, was practically the county treasurer, for he received, retained and paid out the county's money, precisely as Watts would have done, had he been in the active discharge of the duties of the office. So that, in legal contemplation, Allen, Bethune & Co. can assert no better claim than Herrington himself could have asserted, and Herrington had no better cause of action against the county than Watts would have had, if he himself had sued, claiming that, although he had the county's money in his hands, he did not use it in paying the claims, but purchased them for himself, paying for them partly in money, and partly in merchandise. This is the true state of the question, because it is clearly shown and not disputed that when Herrington paid, or purchased the certificates, he had the county's money with which to pay them, and that money still remains in his hands unaccounted for. The law pronounces the transaction a payment of the county's indebtedness with the county's funds, and not a purchase by treasurer, or by Herrington, his *alter ego*.

The circuit court did not err in the charges given, nor in the rejection of the evidence offered. The latter could shed no light on the merits of the controversy.

Affirmed.